FILED 24 OCT '19 15:23 USDC-ORP

# UNITED STATES DISTRICT COURT



## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:19-cr-00333-MO |
| v. | SECOND SUPERSEDING INDICTMENT |
| [image] | |
| **RONALD CLAYTON RHODES,** a/k/a "Big Fly," **JAVIER FERNANDO HERNANDEZ,** a/k/a "Stoney Fly," a/k/a "Stoney Flyckoon," **LORENZO LARON JONES,** a/k/a "Low Down," | 18 U.S.C. § 1962(d) 18 U.S.C. §§ 1959(a)(1) and 2 18 U.S.C. §§ 924(c)(1)(A)(iii) and § 2 18 U.S.C. §§ 924(j) and 2 18 U.S.C. §§ 1959(a)(1) and 2 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 18 U.S.C. §§ 1959(a)(3) and 2 18 U.S.C. § 1959(a)(5) 18 U.S.C. §§ 3591 and 3592 |
| **Defendants** | **Forfeiture Allegations** |
| | **UNDER SEAL** |

## THE GRAND JURY CHARGES:

### The Enterprise

1.      At all times relevant to this Superseding Indictment, the Hoover Criminal Gang

(the Hoovers), was a criminal street gang whose members engaged in acts of violence involving

murder, assault, robbery, and sex trafficking, as well as engaged in narcotics trafficking, and

which operated in Oregon, California, Washington, and elsewhere.

**Second Superseding Indictment**                                      **Page 1**
Revised April 2018

2.      The Hoovers originated in Los Angeles, California, in the late 1960s and were comprised of nine participating organizations, commonly referred to as "sets." The Hoovers originally formed as a Crip set, known as the Hoover Crips, but the Hoovers broke away and took on its current identity as the "Hoover Criminal Gang" in the late 1990s, and ultimately considered the Crips as a rival gang.

3.      The Hoovers established a presence in the Portland, Oregon area in the early 1980s and were mainly comprised of two sets, the Hoover 107 and the 74 Hoover. In Oregon, Hoover 107 and 74 Hoover often refer to themselves as the "1074 Hoover" to show their common identity as the Hoovers.

4.      In Portland, Oregon, the Hoovers maintained several long-standing alliances with other street gangs. This included a partnership with an original Blood set in Portland, the Unthank Park Hustlers. This partnership was memorialized by multiple members referring to both gangs together as "Hoovthank." A second partnership of the Portland Hoovers was with the Inglewood Family Bloods. The Hoovers' relationship with both of these Blood sets also was comprised of multi-generational families whose members belonged to the Hoovers and the Blood sets. Members of the Unthank Park Hustlers and the Inglewood Family Bloods routinely conducted criminal activities in association with and in support of, members of the Hoover Criminal Gang.

5.      The Hoovers developed rivalries with the local Crip sets, including the Portland original Kerby Blocc Crips, Columbia Villa Crips, and Mafia Style Crips. The Hoovers also maintained rivalries with several Los Angeles based Crip sets including the Rollin' 60's, Six-Deuce East Coast Crips, and the Imperial Village Crips. And while the Hoovers were partnered

**Second Superseding Indictment**                                                      **Page 2**

with some Blood sets, they also considered some Portland original Blood sets as enemies,
including the Woodlawn Park Bloods and the Loc'd Out Pirus.

      6.     The Hoovers referred to themselves as "EBK" and "ABK." These acronyms
stood for "Every Body Killers" and "Any Body Killers."

      7.     The Hoovers had a loose hierarchical structure in which members were not given
specific ranks, but carried different amounts of power and influence based on age and gang
activity. Older gang members who gained the highest influence and status were often referred to
as Original Gangsters (OGs). Original Gangsters were often referred to as "shot callers," and
had the authority to order younger members to commit violent acts. One level below the
Original Gangster was the status of the Gangster. Below Gangsters were Tiny Gangsters. Baby
Gangsters were the youngest Hoover members.

      8.     Members of the Hoovers used nicknames and monikers to demonstrate
membership within the enterprise. Senior members, called "big homies," adopted younger
members, called "little homies," to conduct business and violence on behalf of the gang. Senior
members passed down versions of their moniker to junior members of the enterprise. Senior
members often used the term "big" before their moniker. Less senior members often used the
term "lil'" before their moniker. Less senior members often used the term "baby" or "tiny"
before their moniker.

      9.     To gain membership into the gang, the Hoovers used an initiation process known
as "jumping iin," in which Hoover members physically beat new recruits for 74 seconds or 107
seconds, depending on the Hoover set the new recruit was invited to join.

10.    To maintain status and increase one's position in the gang, Hoovers were expected to carry out violence on behalf of the enterprise.  Participation in violent criminal activity by a member or associate increased the respect accorded to that member or associate and resulted in that member or associate maintaining or increasing his status and position within the enterprise.  Likewise, a member's or associate's refusal to carry out orders from higher-ranking members, or refusal to participate in criminal activity or acts of violence, decreased the respect accorded to that member or associate, and resulted in decreasing that member's or associate's status in the Hoover Criminal Gang and subjected the member or associate to acts or threatened acts of violence.  Younger Hoovers were often provided firearms by more senior Hoovers to shoot gang rivals in order to gain clout, respect, and power within the gang and instill fear in rival gang members.  Members of the Hoovers primarily engaged in violence to earn the respect of other Hoover members, as well as the respect of allies and rivals.  The Hoovers were required to use violence to retaliate against any perceived slight and in response to any violence done to a member or ally.

11.    As part of operations, the Hoovers held meetings in order to manage gang business.  Members discussed rules, organizational strategies, recruitment, intelligence on enemy gangs, members in police custody, and seeking retribution against members previously kicked out of the enterprise or who "snitched" to law enforcement.

12.    Like many criminal street gangs, the Hoovers used a wide variety of symbols to identify gang membership and to distinguish themselves from others.  For example, Hoover members wore or otherwise employed the color orange as their gang marker.  Hoover members also commonly wore clothing of professional sports franchises who used orange as one of their

team colors, such as the Houston Astros, San Francisco Giants, and Baltimore Orioles. The
Houston Astros' "H" inside a star logo was also a common emblem that Hoover members
displayed on their clothing. Orange bandanas were also commonly worn by Hoover members to
signify that they were Hoover members. Moreover, an assortment of tattoos was also used to
identify Hoover members. These included an "H" with a star, the letters "SF," and numbers, to
include "74" and "107," depicting different Hoover sets.

13.    · Hoovers also used a variety of words and numbers to identify themselves as
Hoover members and associates. The most common of these included the numbers 74, 107,
1074, 716, and the words "Groove," "Verz," "Groovin," "Westside Hoover Gang," "Bay Bay'z,"
a reference to Hoover 74 members, and "Selos," which is Swahili for "seven" and is a reference
to Hoover 107 members. Similarly, certain written language, both in the form of codes and
distinctive spelling, was also used to denote Hoover membership. Hoover members often
replaced the letter "o" with an "x" as a show of disrespect to Rollin' 60's Crips, a rival street
gang. For example, the word "Hoover" may be spelled as "Hxxver" or "HØØVER." Hoover
members also used the term "HIP," or "Hoover in Peace," as a show of respect for a deceased
member.

14.    Hoover members used their hands and fingers to form signs as a means of
communication, commonly referred to as "throwing signs." Hoover members used these hand
signs to identify themselves as gang members and to challenge rival gang members or law
enforcement officers. One of the most commonly used Hoover hand signs involved a member
using his/her fingers to form the letter "H," representing "Hoover." Displaying "H" is done by
touching the thumb to the index and middle finger, while pointing those fingers toward the

**Second Superseding Indictment**                                                      **Page 5**

ground and closing the remaining digits. Another frequently used Hoover hand sign involved a member using both hands to form an "H." This was done by pointing both thumbs up and both pinkies down with the index fingers touching in the middle. Additionally, Hoover members would form a "7" by pointing the index finger down and extending the thumb. Hoover members also formed a "4" by tucking the thumb and extending all four fingers. Hoover members also used a hand sign that involved a member using his/her fingers to form the hand sign of a rival gang, then used his/her other hand to "flip off" the rival sign with his/her middle finger.

15.     The Hoovers adopted a code of conduct that is memorialized in a published book entitled The Groove Scriptures. The Groove Scriptures provides the history of the enterprise and promotes the superiority of the Hoovers as a criminal gang. The Groove Scriptures provides guidance for members on a variety of matters, including clothing, colors, symbols, language to use, how to treat enemies, how to earn respect, and how to respond to disrespect.

16.     At all times relevant to this Superseding Indictment, the defendants, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ **RONALD CLAYTON RHODES, a/k/a "Big Fly," JAVIER FERNANDO HERNANDEZ, a/k/a "Stoney Fly," a/k/a "Stoney Flyckoon," and LORENZO LARON JONES, a/k/a "Low Down,"** and others known and unknown, were members and associates of the Hoovers, a criminal organization whose members and associates engaged in, among things, narcotics trafficking, firearms trafficking, sex trafficking, armed robberies and burglaries, and repeated acts of violence, including acts involving murder and assault with firearms. The Hoovers operated in several northwestern states, including Oregon and Washington.

17.     The Hoovers, including its leadership, membership, and associates, constituted an "enterprise" as defined in Title 18, United States Code, Sections 1959(b)(2) and 1961(4), that is, a group of individuals associated in fact, which engaged in, and the activities of which affected, interstate and foreign commerce.  The Hoovers constituted an ongoing organization whose members and associates functioned as a continuing unit for a common purpose of achieving the objectives of the Hoover enterprise.

### Purposes of the Enterprise

18.     The purposes of the Hoover enterprise included the following:

a.     Enriching the members and associates of the enterprise through, among other things, acts involving murder, assault, robbery, sex trafficking, and the distribution of narcotics.

b.     Preserving and protecting the power, territory, and profits of the enterprise through the use of intimidation, violence, threats of violence, robbery, assaults, and murder.

c.     Preventing and retaliating against acts of violence perpetrated by rivals against the enterprise and its members.

d.     Keeping victims in fear of the enterprise and in fear of its members and associates through threats of violence and violence.

e.     Promoting and enhancing the reputation and standing of the enterprise and its members.

### Manner and Means of the Enterprise

19.     Members of the Hoovers and their associates used various means and methods to conduct the affairs of the enterprise, which further their reputation, wealth, and control, secure

their protection and dominance, and contribute to the growth and expansion of the enterprise's criminal activities within the Portland, Oregon metropolitan area.  The manner and means by which the defendants and their associates conducted and participated in the conduct of the affairs of the enterprise included the following:

a.    Members of the enterprise and their associates have used, attempted to use, and conspired to use violence with firearms.

b.    Members of the enterprise and their associates have committed acts of violence, including acts involving murder, assault with a deadly weapon, robbery, and sex trafficking (minors and through fraud, force and coercion).

c.    Members of the enterprise have promoted a climate of fear through violence and threats of violence.

d.    Members of the enterprise and their associates have used and threatened to use physical violence against various individuals.

e.    Members of the enterprise and their associates have trafficked in controlled substances, firearms and prostitution.

20.    At all times relevant to this Superseding Indictment, the Hoovers, the above-described enterprise, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), consisting of multiple acts involving:

a.    Murder, in violation of Oregon Revised Statutes 163.115(1)(a), 161.450, 161.405 and 161.155(2)(b); and

**Second Superseding Indictment**                                                      **Page 8**

b.      Robbery, in violation of Oregon Revised Statutes 164.415, 161.450, 161.405, and 161.155(2)(b);

and multiple acts indictable under the following provisions of Title 18, United States Code:

c.      18 U.S.C. § 1591 (relating to peonage, slavery, and trafficking in persons);

d.      18 U.S.C. § 1951 (relating to interference with commerce, robbery, or extortion);

and multiple offenses involving trafficking in controlled substances in violation of:

e.      21 U.S.C. § 846 (Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances); and

f.      21 U.S.C. § 841 (Distribution and Possession with Intent to Distribute Controlled Substances).

### COUNT 1
### (Racketeering Conspiracy)
### (18 U.S.C. § 1962(d))

21.     Paragraphs One through Twenty are realleged and incorporated by reference as though fully set forth herein.

22.     Beginning on a date unknown, but starting no later than June 22, 1989, and continuing to on or about the date of this Second Superseding Indictment, in the District of Oregon and elsewhere, the defendant, **LORENZO LARON JONES, aka "Low Down,"** and other persons not named in this count of the Second Superseding Indictment, being persons employed by and associated with the Hoovers, which enterprise was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly, intentionally and

unlawfully combine, conspire, confederate and agree with one another to violate Title 18 United

States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the

conduct of the affairs of the Hoovers enterprise through a pattern of racketeering activity, as

defined in Title 18, United States Code, Section 1961(1) and (5), consisting of

    a.   Multiple threats and acts involving:

        (1)   Murder, in violation of Oregon Revised Statutes 163.115(1)(a),

              161.450, and 161.405; and

        (2)   Robbery, in violation of Oregon Revised Statutes 164.415,

              161.450, and 161.405;

multiple acts indictable under the following provisions of Title 18, United States Code:

        (3)   18 U.S.C. § 1591 (relating to peonage, slavery, and trafficking

              in persons;

        (4)   18 U.S.C. § 1951 (relating to interference with commerce,

              robbery, or extortion);

and multiple offenses involving trafficking in controlled substances in violation of:

        (5)   21 U.S.C. § 846 (Conspiracy to Distribute and Possess with

              Intent to Distribute Controlled Substances); and

        (6)   21 U.S.C. § 841 (Distribution and Possession with Intent to

              Distribute Controlled Substances).

/ / / /

/ / / /

/ / / /

Overt Acts

In furtherance of the conspiracy and to affect the object and purposes thereof, defendant, **LORENZO LARON JONES, aka "Low Down,"** and others known and unknown, committed various overt acts, including, but not limited to, the following:

23.    On or about June 22, 1989, defendant **LORENZO LARON JONES, aka "Low Down,"** attempted to murder "A.M." and other suspected rival gang members by discharging a .22 caliber pistol at the group in a drive-by shooting in Portland, Oregon.

24.    On or about May 24, 1991, defendant **LORENZO LARON JONES, aka "Low Down,"** attempted to murder "A.W.", a suspected rival gang member, by discharging a firearm and shooting "A.W." in the shoulder in Portland, Oregon.

25.    On or about December 19, 1993, defendant **LORENZO LARON JONES, aka "Low Down,"** discharged a firearm at an occupied vehicle following a dispute in Eugene, Oregon.

26.    On or about December 19, 1993, in a separate incident than that charged in Paragraph 25, defendant **LORENZO LARON JONES, aka "Low Down,"** discharged a firearm at an occupied dwelling following a dispute in Eugene, Oregon.

27.    On or about July 19, 1998, defendant **LORENZO LARON JONES, aka "Low Down,"** murdered Ascensio Genchi Garcia by discharging a firearm at Ascensio Genchi Garcia multiple times, which caused Ascensio Genchi Garcia's death in Portland, Oregon.

28.    On or about October 24, 1998, defendant **LORENZO LARON JONES, aka "Low Down,"** knowingly distributed cocaine, a controlled substance, for consideration, in Portland, Oregon.

**Second Superseding Indictment**                                             **Page 11**

29.    On or about April 1, 1999, defendant **LORENZO LARON JONES, aka "Low Down,"** possessed two 9mm firearms, in violation of federal law, in Portland, Oregon.

30.    On or about July 1, 2005, defendant **LORENZO LARON JONES, aka "Low Down,"** possessed a firearm, in violation of federal law, in Portland, Oregon.

31.    On or about August 8, 2005, defendant **LORENZO LARON JONES, aka "Low Down,"** possessed 9mm and 10mm firearms, in violation of federal law, which were discharged in a shootout with a rival gang in Portland, Oregon.

32.    On or about September 17, 2017, defendant **LORENZO LARON JONES, aka "Low Down,"** and an allied Inglewood Family Blood gang member attempted to murder "G.S.," "S.A.," "D.M.," and an unidentified female when both subjects discharged firearms at the group in Portland, Oregon.

33.    On or about September 17, 2017, defendant **LORENZO LARON JONES, aka "Low Down,"** murdered Wilbert Butler with an allied Inglewood Family Blood gang member when both subjects discharged firearms at Wilbert Butler, resulting in the death of Wilbert Butler in Portland, Oregon.

34.    Beginning on or about September 17, 2017 and continuing until January 19, 2018, defendant **LORENZO LARON JONES, aka "Low Down,"** possessed two stolen firearms, including a Glock .40 caliber used in the murder of Wilbert Butler and a 9mm, in violation of federal law, at 12710 SE Lydia Court in Portland, Oregon.

35.    On or about December 2, 2017, defendant **LORENZO LARON JONES, aka "Low Down,"** attempted to murder "D.H." by discharging a firearm at "D.H.," a suspected rival gang member in Eugene, Oregon.

**Second Superseding Indictment**                                    **Page 12**

36.    On or about December 23, 2017, defendant **LORENZO LARON JONES, aka
"Low Down,"** attempted to murder "J.C." by discharging a firearm at "J.C.," a suspected rival
gang member in Portland, Oregon.

37.    Beginning on December 2, 2017 and continuing until January 19, 2018, defendant
**LORENZO LARON JONES, aka "Low Down,"** possessed a 9mm Luger Glock
semiautomatic pistol firearm used to shoot at "D.H." and "J.C." in violation of federal law, at
1146 Brockton Place in Eugene, Oregon.

38.    On or about January 19, 2018, defendant **LORENZO LARON JONES, aka
"Low Down,"** possessed a loaded Smith & Wesson 9mm firearm in the glovebox of his
Mercedes Benz, in violation of federal law, in Eugene, Oregon.

39.    Beginning no sooner than July 25, 2016 and continuing until January 19, 2018,
defendant **LORENZO LARON JONES, aka "Low Down,"** knowingly distributed controlled
substances including cocaine, heroin and a mixture or substance containing a detectable amount
of methamphetamine.

<u>Special Sentencing Factor</u>

40.    On or about July 19, 1998, in Portland, Oregon, defendant **LORENZO LARON
JONES, aka "Low Down,"** did intentionally and knowingly murder Ascensio Genchi Garcia,
that is intentionally caused the death of another human being, by discharging a firearm at
Ascensio Genchi Garcia multiple times, in violation of Oregon Revised Statutes 163.115(1)(a)
(murder), and 161.155(2)(b) (aid and abet).

41.    On or about September 17, 2017, in Portland, Oregon, defendant **LORENZO
LARON JONES, aka "Low Down,"** did intentionally and knowingly murder Wilbert Butler,

**Second Superseding Indictment**                                    **Page 13**

that is intentionally caused the death of another human being, by discharging a firearm at Wilbert

Butler multiple times, in violation of Oregon Revised Statutes 163.115(1)(a) (murder) and

161.155(2)(b) (aid and abet).

42.    Beginning no sooner than July 25, 2016 and continuing until January 18, 2018,

defendant **LORENZO LARON JONES, aka "Low Down,"** distributed 500 grams or more of a

mixture or substance containing a detectable amount of methamphetamine.

In violation of Title 18, United States Code, Section 1962(d).

**COUNT 2**
**(Murder in Aid of Racketeering)**
**(18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2)**

The allegations contained in Paragraphs One through Twenty of this Second Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about July 19, 1998, in the District of Oregon, for the purpose of maintaining and

increasing position in the Hoovers, an enterprise engaged in racketeering activity, the defendant,

**LORENZO LARON JONES, aka "Low Down,"**  and others known and unknown to the grand

jury, aiding and abetting each other, unlawfully and knowingly committed the murder of

Ascensio Genchi Garcia, in violation of Oregon Revised Statutes 161.155(2)(b) (aid and abet),

and 163.115(1)(a) (Murder).

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

**COUNT 3**
**(Using and Carrying a Firearm During a Crime of Violence)**
**(18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2)**

On or about July 19, 1998, in the District of Oregon, the defendant, **LORENZO**

**LARON JONES, aka "Low Down,"** during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, the Violent Crime in Aid of

Racketeering alleged in Count 2 of this Second Superseding Indictment, did knowingly use and

carry a firearm, which was discharged.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

## COUNT 4
### (Causing Death Through Use of a Firearm)
### (18 U.S.C. § 924(j) and 18 U.S.C. § 2)

On or about July 19, 1998, in the District of Oregon, the defendant, **LORENZO**

**LARON JONES, aka "Low Down,"** in the course of a violation of Title 18, United States

Code, Section 924(c), as alleged in Count 3 of this Second Superseding Indictment, did

knowingly and purposely cause the death of Ascensio Genchi Garcia through the use of a

firearm.

In violation of Title 18, United States Code, Sections 924(j) and 2.

## COUNT 5
### (Murder in Aid of Racketeering)
### (18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2)

The allegations contained in Paragraphs One through Twenty of this Second Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about September 17, 2017, in the District of Oregon, for the purpose of

maintaining and increasing position in the Hoovers, an enterprise engaged in racketeering

activity, the defendant, **LORENZO LARON JONES, aka "Low Down,"** and others known and

unknown to the grand jury, aiding and abetting each other, unlawfully and knowingly committed

the murder of Wilbert Butler, in violation of Oregon Revised Statutes 161.155(2)(b) (aid and

abet), and 163.115(1)(a) (Murder).

**Second Superseding Indictment**                                           **Page 15**

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

## COUNT 6
### (Using and Carrying a Firearm During a Crime of Violence)
### (18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2)

On or about September 17, 2017, in the District of Oregon, the defendant, **LORENZO**

**LARON JONES, aka "Low Down,"** during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, the Violent Crime in Aid of

Racketeering alleged in Count 5 of this Second Superseding Indictment, did knowingly use and

carry a firearm, which was discharged.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

## COUNT 7
### (Causing Death Through Use of a Firearm)
### (18 U.S.C. § 924(j) and 18 U.S.C. § 2)

On or about September 17, 2017, in the District of Oregon, the defendant, **LORENZO**

**LARON JONES, aka "Low Down,"** in the course of a violation of Title 18, United States

Code, Section 924(c), as alleged in Count 6 of this Second Superseding Indictment, did

knowingly and purposely cause the death of Wilbert Butler through the use of a firearm.

In violation of Title 18, United States Code, Sections 924(j) and 2.

## COUNT 8
### (Assault with a Dangerous Weapon in Aid of Racketeering)
### (18 U.S.C. § 1959(a)(3) and 18 U.S.C. § 2)

The allegations contained in Paragraphs One through Twenty of this Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about ▮▮▮▮▮▮▮▮▮▮ in the District of Oregon, for the purpose of

maintaining and increasing position in the Hoovers, an enterprise engaged in racketeering

activity, the defendant, ███████████████████████████████ unlawfully and

knowingly committed, and aided and abetted the commission of, the assault of ██████ with a

dangerous weapon, in violation of Oregon Revised Statutes 161.155(2)(b) (aid and abet) and

163.185(1)(a) (Assault in the First Degree).

In violation of Title 18, United States Code, Sections 1959(a)(3) and 2.

## COUNT 9
### (Conspiracy to Commit Murder in Aid of Racketeering)
### (18 U.S.C. § 1959(a)(5))

The allegations contained in Paragraphs One through Twenty of this Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about ████████████ in the District of Oregon, for the purpose of

maintaining and increasing position in the Hoovers, an enterprise engaged in racketeering

activity, the defendant, ███████████████████████████ unlawfully and

knowingly conspired and agreed with others known and unknown to murder ██████ in violation

of Oregon Revised Statutes 161.450 (criminal conspiracy), 163.115(1)(a) (Murder).

In violation of Title 18, United States Code, Section 1959(a)(5).

## COUNT 10
### (Using and Carrying a Firearm During a Crime of Violence)
### (18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2)

On or about ████████████ in the District of Oregon, the defendant, ██████████

███████████████████ did during and in relation to a crime of violence for which he

may be prosecuted in a court of the United States, namely, the Violent Crime in Aid of

Racketeering alleged in Count 8 of this Second Superseding Indictment, did knowingly use and

carry a firearm, which was discharged.

**Second Superseding Indictment**                                    **Page 17**

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

### COUNT 11
### (Murder in Aid of Racketeering)
### (18 U.S.C. § 1959(a)(1) and 18 U.S.C. § 2)

The allegations contained in Paragraphs One through Twenty of this Second Superseding

Indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about December 16, 2015, in the District of Oregon, for the purpose of maintaining

and increasing position in the Hoovers, an enterprise engaged in racketeering activity, the

defendants, **RONALD CLAYTON RHODES, a/k/a "Big Fly,"** and **JAVIER FERNANDO**

**HERNANDEZ, a/k/a "Stoney Fly," a/k/a "Stoney Flyckoon,"** and others known and

unknown to the grand jury, aiding and abetting each other, unlawfully and knowingly committed

the murder of Kyle Polk, in violation of Oregon Revised Statutes 161.155(2)(b) (aid and abet),

and 163.115(1)(a) (Murder).

In violation of Title 18, United States Code, Sections 1959(a)(1) and 2.

### COUNT 12
### (Using and Carrying a Firearm During a Crime of Violence)
### (18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2)

On or about December 16, 2015, in the District of Oregon, the defendants, **RONALD**

**CLAYTON RHODES, a/k/a "Big Fly,"** and **JAVIER FERNANDO HERNANDEZ, a/k/a**

**"Stoney Fly," a/k/a "Stoney Flyckoon,"** during and in relation to a crime of violence for which

they may be prosecuted in a court of the United States, namely, the Violent Crime in Aid of

Racketeering alleged in Count 11 of this Second Superseding Indictment, did knowingly use and

carry a firearm, which was discharged.

In violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2.

**Second Superseding Indictment**                                          **Page 18**

## COUNT 13
### (Causing Death Through Use of a Firearm)
### (18 U.S.C. § 924(j) and 18 U.S.C. § 2)

On or about December 16, 2015, in the District of Oregon, the defendants, **RONALD**

**CLAYTON RHODES, a/k/a "Big Fly," and JAVIER FERNANDO HERNANDEZ, a/k/a**

**"Stoney Fly," a/k/a "Stoney Flyckoon,"** in the course of a violation of Title 18, United States

Code, Section 924(c), as alleged in Count 12 of this Second Superseding Indictment, did

knowingly and purposely cause the death of Kyle Polk through the use of a firearm.

In violation of Title 18, United States Code, Sections 924(j) and 2.

## NOTICE OF SPECIAL FINDINGS
### (18 U.S.C. §§ 3591 and 3592)

1.      The Grand Jury incorporates by reference and re-alleges the allegations contained

in Counts 2, 4, 5, 7, 11 and 13 of this Second Superseding Indictment are hereby re-alleged and

re-incorporated as set forth in full herein.

2.      As to Counts 2 and 4 of this Second Superseding Indictment, defendant

**LORENZO LARON JONES, aka "Low Down,":**

> a.      Was 18 years of age or older at the time of the offenses.  [Title 18, United
>
> States Code, Section 3591(a)].
>
> b.      Intentionally killed the victim, Ascensio Genchi Garcia.  [Title 18, United
>
> States Code, Section 3591(a)(2)(A)].
>
> c.      Intentionally inflicted serious bodily injury that resulted in the death of the
>
> victim, Ascensio Genchi Garcia.  [Title 18, United States Code, Section
>
> 3591(a)(2)(B)].

d.      Intentionally participated in an act, contemplating that the life of a person would be taken and intending that the lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Ascensio Genchi Garcia, died as a direct result of the acts.  [Title 18, United States Code, Section 3591(a)(2)(C)].

e.      Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Ascensio Genchi Garcia, died as a direct result of the act.  [Title 18, United States Code, Section 3591(a)(2)(D)].

f.      Committed the murder of Ascensio Genchi Garcia after substantial planning and premeditation to cause the death of a person, 18 U.S.C. Section 3592(c)(9).

3.    As to Counts 5 and 7 of this Second Superseding Indictment, defendant **LORENZO LARON JONES, aka "Low Down,":**

a.      Intentionally killed the victim, Wilbert Butler.  [Title 18, United States Code, Section 3591(a)(2)(A)].

b.      Intentionally inflicted serious bodily injury that resulted in the death of the victim, Wilbert Butler.  [Title 18, United States Code, Section 3591(a)(2)(B)].

c.      Intentionally participated in an act, contemplating that the life of a person would be taken and intending that the lethal force would be used in connection with a

person, other than one of the participants in the offense, and the victim, Wilbert

Butler. [Title 18, United States Code, Section 3591(a)(2)(A)].

    d.      Intentionally inflicted serious bodily injury that resulted in the death of the

victim, Wilbert Butler. [Title 18, United States Code, Section 3591(a)(2)(B)].

    e.      Intentionally participated in an act, contemplating that the life of a person

would be taken and intending that the lethal force would be used in connection with a

person, other than one of the participants in the offense, and the victim, Wilbert

Butler. [Title 18, United States Code, Section 3591(a)(2)(A)].

    f.      Intentionally inflicted serious bodily injury that resulted in the death of the

victim, Wilbert Butler. [Title 18, United States Code, Section 3591(a)(2)(B)].

    4.      As to Counts 11 and 13 of this Second Superseding Indictment, defendants

**RONALD CLAYTON RHODES, a/k/a "Big Fly," and JAVIER FERNANDO**

**HERNANDEZ, a/k/a "Stoney Fly," a/k/a "Stoney Flyckoon:"**

    a.      Were 18 years of age or older at the time of the offenses. [Title 18, United

States Code, Section 3591(a)].

    b.      Intentionally killed the victim, Kyle Polk. [Title 18, United States Code,

Section 3591(a)(2)(A)].

    c.      Intentionally inflicted serious bodily injury that resulted in the death of the

victim, Kyle Polk. [Title 18, United States Code, Section 3591(a)(2)(B)].

    d.      Intentionally participated in an act, contemplating that the life of a person

would be taken and intending that the lethal force would be used in connection with a person,

other than one of the participants in the offense, and the victim, Kyle Polk, died as a direct result of the acts. [Title 18, United States Code, Section 3591(a)(2)(C)].

      e.     Intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim, Kyle Polk, died as a direct result of the act. [Title 18, United States Code, Section 3591(a)(2)(D)].

      f.     Committed the offense after substantial planning and premeditation to cause the death of a person, 18 U.S.C. Section 3592(c)(9).

## FORFEITURE ALLEGATIONS

Upon conviction of an offense in violation of Title, 18, United States Code, Section 1962 as charged in Count 1 of this Superseding Indictment, defendant **LORENZO LARON JONES, aka "Low Down,"** pursuant to Title 18, United States Code, Section 1963, shall forfeit to the United States of America any interest, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendant(s) established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962, including, but not limited to:

    (1)    A Glock .40 caliber handgun and associated ammunition seized from 12710 SE Lydia Court in Portland, Oregon.

    (2)    A Kel-Tec 9mm Luger handgun and associated ammunition seized from 12710 SE Lydia Court in Portland, Oregon.

(3)     A Luger Glock 9mm semiautomatic handgun and associated seized ammunition

seized from 1146 Brockton Place in Eugene, Oregon.

Upon conviction of the offense in Counts 6 and 7, defendant, **LORENZO LARON**

**JONES, aka "Low Down,"** shall forfeit to the United States pursuant to 18 U.S.C. § 924(d) and

28 U.S.C. § 2461(c), the firearm involved in that offense, including without limitation:

(1)     a Glock .40 caliber handgun and associated ammunition.

Upon conviction of the offense in Count 10, defendant, ▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ shall forfeit to the United States pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. §

2461(c), the firearm involved in that offense, including without limitation:

(1)     a ▮▮▮▮▮▮▮▮ and all associated ammunition.

Dated: October 23, 2019

A TRUE BILL.



OFFICIATING FOREPERSON

Presented by:

BILLY J. WILLIAMS
United States Attorney

LEWIS S. BURKHART, OSB #082781
Assistant United States Attorney

STEVEN T. MYGRANT, OSB #031293
Assistant United States Attorney

**Second Superseding Indictment**                                                  **Page 23**